DAVIS & GILBERT **JUDGE BATTS**    **09 CV    7297**
Marc Rachman (mrachman@dglaw.com)
Shirin Keen (skeen@dglaw.com)
Sean Cameron (scameron@dglaw.com)
1740 Broadway
New York, New York 10019
(212) 468-4800
*Attorneys for Plaintiffs*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DR. MEHMET OZ; ZO CO I, LLC; OW LICENSING
COMPANY, LLC; and HARPO, INC.,

           Plaintiffs,

        v.

FWM LABORATORIES, INC.; CPX INTERACTIVE
LLC; NETALAB CORP; GILLMAP LIMITED a/k/a
NATURES PERFECTION; MINIRED UAB; NUTRA
LANE LLC a/k/a GNS GLOBAL LLC; CENTRAL
COAST NUTRACEUTICALS a/k/a CCN INC.; PURE
NUTRIENTS; B67 NUTRA PURE SYSTEMS a/k/a
96R PURE NATURE PRODUCTS a/k/a P67 WIE
NATURAL PRODUCTS LLC; SPL NUTRITION,
LLC; ACAI BERRY BREEZE; LIFE FIT LABS LLC;
REJUVENATE WORLDWIDE; HEALTHBUY.COM
a/k/a HEALTH BUY LTD.; PHYSICAL
ENHANCEMENT LABS; MYCOLONRELIEF; XM
LABS LLC a/k/a RX LABS; RAUSCHER BEKKE,
LLC a/k/a RESVLIFE, LLC a/k/a RES-V-LIFE, INC.;
BODY SOLUTION; 456 VITAL HEALTH SYSTEMS,
LLC a/k/a FCM PERFORMANCE HEALTH USA a/k/a
AEG PARTNERS LTD.; JDW MEDIA, LLC; PURE
VITAMINS; XLENT HEALTH; ORGANICA
RESEARCH LLC; INCLINE HEALTH LTD.;
HEALTH TECHNOLOGY; NATURAL SOURCE
STORE, LLC; 0841092 B.C. LTD.; BOTTOM TWO
INVESTMENTS a/k/a NUTRA FOODS;
HEALTHREZV, LLC a/k/a HEALTHREZV;
HEALTHY COLON, INC. a/k/a HEALTHY COLON,
LLC; REDUX-V HOLDINGS, INC. a/k/a REDUX
HOLDINGS, INC. a/k/a NATURADE, INC.; EASY
WHITE, INC. a/k/a EASY WHITE LABS; JET

Index No. 09 Civ. _____

**COMPLAINT**

**Plaintiffs Demand A Trial By Jury**

PROCESSING; MONAVIE AS, LLC a/k/a MONAVIE
HOLDINGS INTERNATIONAL, LLC a/k/a
MOVAVIE LLC a/k/a MONAVIE; BRAZILIAN
BASICS; L'AVENIR; ULTRA GREEN PRODUCTS,
LLC a/ka/ ULTRA GREEN PRODUCTS; REZ-
BERRIES a/k/a REZACTIV a/k/a RES Q; CRUSH
LLC; 3V MARKETING, LLC; JAMES RUSSEL;
MIKE JOHNSON; DAVID DUBE; KATHERINE
CLEMENTS; PAWEL RESZKA; MIKE KOENS;
TOUVAN SUGHIARTO; RYAN BUKEVICZ; MARK
SWARTZ; MATTHEW KELLY; SIDNEY FEIN; AND
DOES and ABC COMPANIES 1-500 inclusive,

Defendants.

Plaintiffs Dr. Mehmet Oz, Zo Co I, LLC ("Zo Co"), OW Licensing Company, LLC
("OW"), and Harpo, Inc. ("Harpo") (together, "Plaintiffs"), by and through their undersigned
attorneys, for their Complaint against the defendants named in this action and described below
(collectively referred to herein as the "Defendants") allege as follows:

## NATURE OF ACTION

1.      Dr. Oz, a renowned doctor who regularly appeared on television on the talk show *The
Oprah Winfrey Show* ("*TOWS*") and who will host the soon-to-premiere *The Dr. Oz Show*, Zo
Co, the owner of the DR. OZ family of trademarks, OW, the holder of the right of publicity
rights of Oprah Winfrey – one of the most famous and respected individuals in the world – and
Harpo, the owner of the "OPRAH" and "O" family of trademarks and the copyrights in the
number-one-rated, award-winning *TOWS*, bring this action seeking injunctive relief and damages
for the Defendants' deceptive and fraudulent practices that have harmed them and thousands of
consumers who have been and are being injured by Defendants' conduct.

2.      Defendants are the sellers, suppliers, importers and/or marketers of products that purport
to be dietary supplements, such as for "resveratrol," "acai berry" and colon cleansing; cosmetics,

such as cellulite and anti-wrinkle creams; and/or over-the-counter drugs, such as tooth-whitening products (together, the "Infringing Products"). These Infringing Products include, but are not limited to: Resveratrol Ultra, ResV, Vital RezV, ResV Pure, ResV Pro, Youth ResV, ResVer XP, Acai Berry Breeze, Acai X3, Acai Pure, Acai Berry Detox, Acai Edge, Acai Burn, Body Solutions, Nature Cleanse, Colon Pro Cleanse, Power Colon Cleanse, Colon Max, Whitening Now, Easy White, Cellutone, and Cosmetyn.

3.      These Defendants are willfully capitalizing on Plaintiffs' valuable reputation and intellectual property rights to lure consumers into ordering their Infringing Products on the false premise that they have been tested or recommended by Ms. Winfrey and/or Dr. Oz when they have not. Defendants are fabricating quotes or falsely purporting to speak in Dr. Oz's and/or Ms. Winfrey's voice about specific brands and products that neither of them has endorsed. Defendants' conduct has gravely injured Plaintiffs' reputations. Plaintiffs seek to stop the unauthorized and unlawful use of Dr. Oz's and Ms. Winfrey's names, pictures, voices and identities, and Harpo's and Zo Co's trademarks and copyrighted works in connection with Defendants' marketing and sales of, or offers to sell the Infringing Products.

4.      Upon information and belief, many of Defendants' offers turn out to be credit card scams or other fraudulent schemes by which Defendants (a) charge customers despite advertising that the Infringing Products are available for a "free trial;" (b) fail to fulfill orders despite charging consumers; or (c) charge consumers for monthly subscriptions of Infringing Products without the consumers having signed up for any such subscription.

5.      Defendants' conduct also raises serious public health and safety concerns because many, if not all, of the Defendants are illegally marketing the Infringing Products, which are not approved as drugs, as a means to cure, mitigate, treat or prevent diseases, illnesses, or serious

conditions. Such marketing messages are, upon information and belief, unsubstantiated and unauthorized health claims, which Defendants falsely attribute to Dr. Oz and Ms. Winfrey.

6. Defendants are brazenly using Plaintiffs' property and infringing upon their rights despite repeated requests that they cease and desist from such use and/or Plaintiffs' other extensive efforts to put a stop to such unauthorized and unlawful use.

7. Plaintiffs seek injunctive relief, damages, including exemplary and punitive damages, and attorney's fees under various causes of action, for violation of their statutory rights of privacy and publicity under New York Civil Rights Law §§ 50 and 51 and the Illinois Right of Publicity Act, 765 ILCS § 1075/1 *et seq.*, trademark infringement, false endorsement, sponsorship or affiliation, and dilution under Sections 32 and 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§1114, 1116-1118 and 1125, copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, deceptive acts and practices under New York General Business Law § 349, false advertising under New York General Business Law § 350, violation of the Illinois Uniform Deceptive Trade Practices Act, cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), common law unfair competition, and unjust enrichment.

## THE PARTIES

8. Plaintiff Dr. Oz is an individual with a principal place of business at Columbia University Medical Center, Milstein Hospital Building 7-435, 177 Fort Washington Avenue, New York, New York 10032. Dr. Oz is a renowned medical doctor who has been a frequent guest on *TOWS*. He is the Director of the Cardiovascular Institute and Vice Chairman of Cardiovascular Services, Department of Surgery, at Columbia University Medical Center, and Professor of Surgery at Columbia University College of Physicians & Surgeons in New York, New York. Dr. Oz is nationally renowned, but since his professional activities are based in New York and in this

4

District, his professional reputation stands to be most affected by Defendants' conduct in the State of New York.

9.      Plaintiff Zo Co is a Delaware corporation, with its principal place of business at 110 North Carpenter Street, Chicago, Illinois 60607, and is registered to do business in the State of New York. Zo Co is the owner of the "Dr. Oz" family of trademarks.

10.     Plaintiff OW is a Delaware limited liability company, with its principal place of business at 110 North Carpenter Street, Chicago, Illinois 60607. OW is the holder of the rights of publicity and related rights of Ms. Oprah Winfrey, one of the world's most known and respected individuals, who resides in the State of Illinois. OW has the right to assert and enforce Ms. Winfrey's rights of publicity.

11.     Plaintiff Harpo is an Illinois corporation, with its with its principal place of business at 110 North Carpenter Street, Chicago, Illinois 60607, and is registered to do business in the State of New York. Harpo is the owner of the "OPRAH" and "O" family of trademarks and the copyrights in the images from and episodes of *TOWS* and Ms. Winfrey that are at issue in this case.

12.     Upon information and belief, Defendant FWM Laboratories, Inc. ("FWM") is located at 4961 Leeward Lane, Fort Lauderdale, Florida 33312, or at 3007 Greene Street, Hollywood, Florida 33019, or at 2040 NE 163 Street, #305, North Miami Beach, Florida 33162. Upon information and belief, FWM is a supplier or importer of certain of the Infringing Products at issue, including Maximum ResV, ACAI X3, Acai Berry Detox, Resveratrol Ultra, RezMelts, Colon Max and Resvie, which are the subject of numerous consumer complaints. FWM's deceptive advertising for these Infringing Products is violating Plaintiffs' rights, and thousands of consumers have complained of credit card fraud and other deceptive practices by FWM in

5

connection with its sale of these Infringing Products, and of its deceptive practices. FWM is doing and transacting business within the State of New York and this judicial district, marketing, selling and/or offering for sale the Infringing Products via its interactive websites and its affiliate marketers.

13.      Upon information and belief, Defendant CPX Interactive LLC ("CPX") is a New York limited liability corporation, with its principal place of business at 1600 Steward Avenue, Suite 401, Westbury, New York 11590.  Upon information and belief, CPX is an online advertising network and global marketing company that is placing banner ads displaying infringing material on websites, including using Dr. Oz's and Ms. Winfrey's name and images without their authority.

14.      Upon information and belief, Defendant Netalab Corp is located at 940 Lincoln Road, Suite 215, Miami Beach, Florida 33139, or at 500 South Pointe Drive, Suite 230, Miami Beach, Florida 33139.  Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Pure ResV Pro, South Beach Java, Acai Energy, and RezV Advance.  Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

15.      Upon information and belief, Defendant Gillmap Limited a/k/a Natures Perfection is located at 600 SW Army Post Road, Des Moines, Iowa 50321 or at 4977 Fairview Avenue, Boise, Idaho 83706.  Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including ACAI BURN, Pure ResV, and Colon Revitalize. Defendant is doing and transacting business within the State of New York and this judicial

6

district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

16.     Upon information and belief, Defendant MiniRED UAB is located at Sunroad Corporate Center, 4445 Eastgate Mall, 2nd Floor, San Diego, California 92121. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Ultimate, Power Colon Cleanse, and Vital RezV. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

17.     Upon information and belief, Defendant Nutra Lane LLC a/k/a GNS Global LLC is located at 871 Coronado Center Drive, #500, Henderson, Nevada 89052 or at 6452 Fig Street, Suite A, Arvada, Colorado 80007. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Berry Elite, ACAI EDGE, Res Ver XP, and ResV. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

18.     Upon information and belief, Defendant Central Coast Nutraceuticals a/k/a CCN Inc. is located at 2375 East Camelback Road, 5th Floor, Phoenix, Arizona 85001. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Pure, Acai Power Blast, and Acai Blast. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

19.     Upon information and belief, Defendant Pure Nutrients is located at 273 Walt Whitman Road, Suite 274, Huntington Station, New York 11746. Upon information and belief, Defendant

7

is a supplier or importer of certain of the Infringing Products at issue, including Natural Cleanse. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

20.     Upon information and belief, Defendant B67 Nutra Pure Systems a/k/a 96R Pure Nature Products a/k/a P67 Wie Natural Products LLC is a supplier or importer of certain of the Infringing Products at issue including ResV Pure. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

21.     Upon information and belief, Defendant SFL Nutrition, LLC is located at 123 NW 13th Street, Suite 212, Boca Raton, Florida 33432. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Berry Supreme, Total Cleanse, Colon xR, and Colon rx. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

22.     Upon information and belief, Defendant Acai Berry Breeze is located at 3370 N. Hayden Road, Suite 123-180, Scottsdale, Arizona 85251. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Berry Breeze and UltraSlim XS. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

23.     Upon information and belief, Defendant Life Fit Labs LLC is located at 1101 High View Drive, Webberville, Michigan 48892. Upon information and belief, Defendant is a supplier or

importer of certain of the Infringing Products at issue, including Colon Cleanse, Colon Cleanse Pro, Probiotic Complete, and Goji Trim Pro.  Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

24.     Upon information and belief, Defendant Rejuvenate Worldwide is located at 3634 Long Prairie Road, Suite 108-113, Flower Mound, Texas 75022.  Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Certified Resveratrol, Colon Pro Cleanse, and Miracle Resveratrol.  Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

25.     Upon information and belief, Defendant HealthBuy.Com a/k/a Health Buy Ltd. is located at 350 N. Glenoaks Boulevard, Suite 305, Burbank, California 91502.  Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Berry Select and Resveratrol Select.  Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

26.     Upon information and belief, Defendant Physical Enhancement Labs is located at 1025 SW 59th Street, Oklahoma City, Oklahoma 73109, or at 6409 S. Western Avenue, Oklahoma City, Oklahoma 73139.  Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Berry Blast and Acai Blast. Defendant is doing and transacting business within the State of New York and this judicial district by

marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

27.    Upon information and belief, Defendant MyColonRelief is located at 1210 S. Brand Boulevard, Glendale, California 91204. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including My Colon Relief. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

28.    Upon information and belief, Defendant XM Labs LLC a/k/a RX Labs is a supplier or importer of certain of the Infringing Products at issue, including Acai Flush and ResV Ultra. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

29.    Upon information and belief, Defendant Rauscher Bekke, LLC a/k/a ResVLife, LLC a/k/a Res-V-Life, Inc. is located at 407 Lincoln Road, Suite 11C, Miami Beach, Florida 33137, or at 12399 Belcher Road South, Largo, Florida 33773, or at 1500 Ocean Drive, Miami Beach, Florida 33139. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Dermapril, Dermapril-SP, and ResV Life. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

30.    Upon information and belief, Defendant Body Solution is located at 20828 Lassen Street, Chatsworth, California 91311. Upon information and belief, Defendant is a supplier or importer

of certain of the Infringing Products at issue, including Body Solution and Striation. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

31.    Upon information and belief, Defendant 456 Vital Health Systems, LLC a/k/a FCM Performance Health USA a/k/a AEG Partners Ltd. is located at 654 North 800 East, #501, Spanish Fork, Utah 84660, or at 78 West 560 South, Orem, Utah 84058. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including ResV Pro. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

32.    Upon information and belief, Defendant JDW Media, LLC is located at 2184 Channing Way, #322, Idaho Falls, Idaho 83404. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Pure Cleanse and Acai Ultra Burn. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

33.    Upon information and belief, Defendant Pure Vitamins is located at 273 Walt Whitman Road, Suite 274, Huntington Station, New York 11746, or at 3280 Suntree Blvd, Suite 101, Melbourne, Florida 32940. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Phosphacore and Eternal RezV. Defendant is doing and transacting business within the State of New York and this judicial district by

11

marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

34.     Upon information and belief, Defendant XLENT Health is located at 3005 South Street, East Troy, Wisconsin 53120. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Res-V and Energai. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

35.     Upon information and belief, Defendant Organica Research LLC is located at 11701 East 53rd Avenue, Denver, Colorado 80239. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Ultimate Colon Cleanse. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

36.     Upon information and belief, Defendant Incline Health Ltd. is located at 6841 Virginia Parkway, Suite 103 #218, McKinney, Texas 75071. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including ResV Daily, Acai Fuel Extreme, and Acai Fuel Cleanse. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

37.     Upon information and belief, Defendant Health Technology is located at 5300 Ontario Mills Parkway, Ontario, California 91764. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Away and Youth ResV.

Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

38.     Upon information and belief, Defendant Natural Source Store, LLC is located at 4051 SW 47th Avenue, Suite 101-102, Davie, Florida 33314 or at 6565 Taft Street, #204, Hollywood, Florida 33024. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Cosmetyn. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

39.     Upon information and belief, Defendant 0841092 B.C. Ltd. is located at 180 West Westfield Avenue, Roselle Park, New Jersey 07204. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Resvermax, Premium Acai Berry, Slim Berry, and Procolo. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

40.     Upon information and belief, Defendant Bottom Two Investments a/k/a Nutra Foods is located at 110 West 9th Street, #665, Wilmington, Delaware, 19801. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Resolution, Acai Nutraburst, RezEX, Maqui Nutraburst, and Exilatrol. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

41.    Upon information and belief, Defendant HealthRezV, LLC a/k/a HealthRezV is located at 10134 6th Street, Suite M, Rancho Cucamonga, California 91730. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including HealthRezV. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

42.    Upon information and belief, Defendant Healthy Colon, Inc. a/k/a Healthy Colon LLC is a supplier or importer of certain of the Infringing Products at issue, including Body Flush. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

43.    Upon information and belief, Defendant Redux-V Holdings, Inc. a/k/a Redux Holdings, Inc. a/k/a/ Naturade, Inc. is located at 2099 South State College Boulevard, Suite 210, Anaheim, California 92886, or at 1 City Boulevard West, Suite 1440, Orange, California 92868. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Redux-V. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

44.    Upon information and belief, Defendant Easy White, Inc. a/k/a Easy White Labs is located at 5711 SW 137th Avenue, Miami, Florida 33183, or at 6899 Winchester Circle, Suite 103, Boulder, Colorado 80301, or at 5711 SW 137 Avenue, Miami, Florida 33183. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Easy White. Defendant is doing and transacting business within the State of

14

New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

45.    Upon information and belief, Defendant Jet Processing is located at 13799 Park Boulevard North, Suite #330, Seminole, Florida 33776. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Natura Burn. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

46.    Upon information and belief, Defendant Monavie AS, LLC a/k/a Monavie Holdings International, LLC a/k/a Monavie LLC a/k/a Monavie is located at 10757 South Riverfront Parkway, Suite 110, Salt Lake City, Utah 84095. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Monavie. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

47.    Upon information and belief, Defendant Brazilian Basics is located at 165 Pleasant Avenue, South Portland, Maine 04106. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Energy. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

48.    Upon information and belief, Defendant L'avenir is located at 1275 Bloomfield Avenue, Building 9, Unit 85, Fairfield, New Jersey 07004. Upon information and belief, Defendant is a

supplier or importer of certain of the Infringing Products at issue, including Cellutone. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

49.     Upon information and belief, Defendant Ultra Green Products, LLC a/k/a Ultra Green Products is located at 2820 Remington Green Circle, Tallahassee, Florida 32308, or at 2160A Sunnydale Boulevard, Clearwater, Florida 33765. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Goji Raw, Resveratrol Lifeline. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

50.     Upon information and belief, Defendant Rez-Berries a/k/a RezActiv a/k/a Res Q is located at 6899 Winchester Circle, Suite 103, Boulder, Colorado 80301. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Rez Activ. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

51.     Upon information and belief, Defendant Crush LLC is located at 9140 S. State Street, Suite 202, Sandy, Utah 84070. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Berry 500. Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

52.    Upon information and belief, Defendant 3V Marketing, LLC is located at 100 Middle Street, West Tower, Portland, Maine 04101 or 482 Congress Street, Portland, Maine 04101. Upon information and belief, Defendant is a supplier or importer of certain of the Infringing Products at issue, including Acai Advanced and Acai Advance.   Defendant is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via its interactive websites and affiliate marketers.

53.    Upon information and belief, Defendant James Russel is an individual residing at 9321 W. Hudson Street, Hartford, Connecticut 21563.   Defendant James Russel is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or    offering    for    sale    the    Infringing    Products    via    his    websites www.resveratrolreviewboards.com,  www.resveratrol24.com,  www.celluliteallgone.com,  and www.byebyewrinkle.com.

54.    Upon information and belief, Defendant Mike Johnson is an individual residing at 12 Front Street, San Francisco, California 90231.  Defendant Mike Johnson is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.drozstretchmarkcure.com and www.exclusiveresveratrol.com.

55.    Upon information and belief, Defendant David Dube is an individual residing at 30 Chelsea Road, Essex Junction, Vermont 05452.  Defendant David Dube is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.resveratrolreports.com and www.resveratrolreviewed.com.

17

56.     Upon information and belief, Defendant Katherine Clements is an individual residing at 2015 Springvale Road, Duluth, Minnesota 55811. Defendant Katherine Clements is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via her websites www.droz4-diet.info and www.healthynaturals.com

57.     Upon information and belief, Defendant Pawel Reszka is an individual residing at 499 Ivy Lane, Apt. 7, Bradley, Illinois 60915. Defendant Pawel Reszka is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.acaisavedmylife.com and http://www.Drozmiracle.com.

58.     Upon information and belief, Defendant Mike Koens is an individual residing at 2342 Santa Monica Boulevard, Los Angeles, California 90025. Defendant Mike Koens is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his website www.dr-oz-resv.com.

59.     Upon information and belief, Defendant Touvan Sughiarto is an individual residing at 10601-G Tierrasanta Boulevard, San Diego, California 92124. Defendant Touvan Sughiarto is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.dr-oz-acai-berry-alert.com and www.oz-resveratrol-alert.com.

60.     Upon information and belief, Defendant Ryan Bukevicz is an individual residing at 1 Breckenridge Drive, Warminster, Pennsylvania 18974. Defendant Ryan Bukevicz is doing and transacting business within the State of New York and this judicial district by marketing, selling

and/or offering for sale the Infringing Products via his websites www.acaiberriestrial.com and www.drozdiet-acaiberry.com.

61.    Upon information and belief, Defendant Mark Swartz is an individual residing at Laurel Oak Road, #1, Voorhees, New Jersey 08043. Defendant Mark Swartz is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.whatisresveratrol.com and www.resveratrolreviews.com.

62.    Upon information and belief, Defendant Matthew Kelly is an individual residing at 2497 Martin Avenue, Bellmore, New York 11710. Defendant Matthew Kelly is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.resveratroltop3.com and www.resveratrolwinepills.com.

63.    Upon information and belief, Defendant Sidney Fein is an individual residing at 1600 Stewart Avenue, Suite 401, Westbury, New York 11590. Defendant Sidney Fein is doing and transacting business within the State of New York and this judicial district by marketing, selling and/or offering for sale the Infringing Products via his websites www.doctorozresv.com and www.aol.doctorozresv.com.

64.    Upon information and belief, Defendants Does and ABC Companies 1-500 are affiliates, marketers, suppliers, manufacturers and/or importers of certain of the Infringing Products via hundreds of websites, including but not limited to: www.drozadvice.com, www.dr-oz-resv.net,

| www.dr-oz-resv.com, | www.ozresvtrial.com, | www.dr-oz-resveratrol-alert.net, |
|---|---|---|
| www.drozresv.com, | www.droz-resv-free.com, | www.Theozresveratrol.com, |
| www.doctorozresv.com, | www.droz-resveratrol-trial.com, | www.oz-loves-resveratrol.com, |

19

www.oprahsacaiberrydiet.com,    http://webmdacaireview.com,    www.dr-oz-acai-ratings.com,
www.dr-oz-suggests.com,    www.dr-oz-coloncleanse.com,    www.drozstretchmarkcure.com,
www.celluliteassociation.com,    www.Drozteethwhitening.com,    www.resveratrol60.com,
www.oprahsspecialdiet.com,    www.oprahdietsecret.com,    www.oprahsnewdiet.com,
www.oprahsbestdiet.com, and www.oprahhealthoffers.com.

65.    Plaintiffs are currently ignorant of the true names and capacities of the defendants sued

herein as Does and ABC Companies 1 through 500, inclusive, and therefore sue these defendants

by such fictitious names. Plaintiffs have identified over 500 web sites selling and/or marketing

the Infringing Products, and will amend this Complaint to allege their true names and capacities

when ascertained. Upon information and belief, Defendants Does and ABC Companies 1-500

include individuals and corporations.

66.    Upon information and belief, at all times all Defendants were the principals, agents,

affiliates, partners, alter-egos, co-conspirators, and/or are acting in concert with each other, and

each acted within the course, scope and authority of such relationships so that, as a result, all

Defendants are jointly and severally liable for the acts alleged in this Complaint. This belief is

based, in part, on the facts that some or all of the Defendants: (a) have identical or similar

websites, (b) are using the same language and images, (c) link or redirect visitors to the same

websites, (d) are aggregated on single websites, (e) market and/or sell the same Infringing

Products manufactured by the same manufacturer, and (f) share profits from sales of the

Infringing Products. A list of the suppliers, products and websites believed to be affiliated with

each other at the time of the filing of this Complaint is attached as Exhibit 1.

## JURISDICTION AND VENUE

67.    This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and the Copyright Act, §17 U.S.C. 101, *et seq.* This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and 28 U.S.C. § 1367(a), because this action arises under the laws of the United States, and this Court has supplemental jurisdiction over related state law claims.

68.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, or a substantial part of the property that is the subject of the action is situated within this district, and Defendants are subject to personal jurisdiction within this district. New York is a major center of Plaintiffs' activities, and Defendants aggressively market and sell their goods in New York and in this District, including making sales to New York residents through active websites.

## FACTUAL ALLEGATIONS

### Plaintiffs Have Valuable Rights in Their Names, Pictures, Voices, Identities, and Trademarks

69.    As a result of the investment of considerable time, effort and expense, both Dr. Oz and Ms. Winfrey have developed valuable rights in their names, pictures, voices, identities personas, and trademarks.

### The Oprah Name and Marks

70.    Ms. Winfrey is one of the world's most famous and respected individuals. Her fame is so extensive that she is instantly recognized by her first name "Oprah" alone.

71.     *TOWS*, featuring Ms. Winfrey as the host, has aired since 1986, and is watched by tens of millions of daily viewers in 145 countries. New York City is a major market for *TOWS* and for the activities of Plaintiffs.

72.     *TOWS* has covered a wide range of topics, including lifestyle, health, and nutrition. Just getting mentioned by Ms. Winfrey on *TOWS* can lead to an exponential increase in a product's sales. This has been colloquially referred to as "The Oprah Effect" or "The O Factor," and was recently the subject of a documentary aired on CNBC titled *The Oprah Effect* which premiered on or about May 28, 2009. Ms. Winfrey's reputation depends, in part, on the quality of the products she recommends, which she does only after careful consideration and vetting to make sure such products meet her standards and approval.

73.     Plaintiff Harpo is the owner of many federal trademark registrations and applications for the mark "OPRAH," alone and in combination with other words. Harpo owns a federal registration, Registration No. 1,726,373, for "OPRAH" in International Class 041, covering "entertainment services rendered through the medium of television in the nature of a variety talk show series." Harpo is also the owner of Registration No. 2,521,889 for "OPRAH" in International Class 041, covering "[c]omputer services, namely, information via a web site featuring information on the subject matter of Applicant's television programs, films and videos, food and books via the Internet," and International Class 042, covering "[c]omputer services, namely, information via a web site featuring health, nutrition, fitness, volunteerism for charities, charitable work and philanthropic lifestyles via the Internet." Harpo is also the owner of Registration No. 2,638,506 for "THE OPRAH WINFREY SHOW" in International Class 041, covering "entertainment services rendered through the medium of television in the nature of a variety talk show series; and computer services, namely, providing information via an Internet

22

web site featuring information on the subject matter of Applicant's television programs, films and videos, food, and books," and International Class 042, covering "computer services, namely, providing information via an Internet web site featuring health, nutrition, fitness, volunteerism for charities, charitable work and philanthropic lifestyles." These registrations are incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b).

74.    The name and trademark OPRAH is well recognized as denoting Harpo and is famous under 15 U.S.C. § 1125(c).

75.    The fame of *TOWS* together with the fame of Ms. Winfrey have resulted in invaluable and incalculable good will to the right of publicity of Ms. Winfrey and to the "OPRAH" and "O" family of trademarks and copyrights.

**The Dr. Oz Name and Marks**

76.    Dr. Oz is a well-regarded medical doctor and is vice chair of surgery and professor of cardiac surgery at Columbia University Medical Center and its College of Physicians and Surgeons, and host of the soon-to-premiere *The Dr. Oz Show*. He has written numerous books, including the *You* series, and other publications, and is a sought-after lecturer. He is involved in a number of non-profit efforts, including as a spokesman and adviser for an organization that provides health information to consumers. He has received multiple awards for his work.

77.    Dr. Oz frequently appears on television to talk about healthcare and nutritional advice and policy, and is a frequent guest on *TOWS*.

78.    Dr. Oz is known to the public as "Dr. Oz." He has obtained celebrity status and soon will be appearing in his own television show.

79.    Zo Co owns several federal trademark applications for the mark DR. OZ, alone and in combination with other words, including Serial No. 77,736,468 for "DR. OZ" in International

Class 041, covering "Entertainment services in the nature of providing newsletters in the fields of diet, exercise, fitness, health and wellness, medicine and medical practices via e-mail; providing on-line journals, namely, blogs featuring information and entertainment in the fields of diet, exercise, fitness, health and wellness, medicine and medical practices; providing information and entertainment via the Internet in the fields of diet, exercise, fitness, health and wellness, medicine and medical practices."

80.    Dr. Oz's fame has resulted in invaluable and incalculable good will to the name and trademark DR. OZ.

## Plaintiffs' Copyrighted Shows In Which No Particular Dietary Supplements, Cosmetics or Drugs are Endorsed

81.    Dr. Oz and Ms. Winfrey are very discerning about the products and services with which they associate themselves.

82.    On or about May 5, 2005, Dr. Oz appeared in an episode of *TOWS* entitled "Insider's Secrets to Make You Younger and Healthier," in which he discussed colon health. Immediately following the episode, upon information and belief, Defendants started advertising and selling dietary supplements that purport to aid in "colon cleansing" on various websites by unlawfully and deceptively using Dr. Oz's and Ms. Winfrey's names, images, and voices.

83.    On or about February 5, 2008, Dr. Oz appeared in another episode of *TOWS* entitled "Dr. Oz Reveals the Ultimate Checklist for Great Aging" in which he discussed a fruit called the "acai berry." Immediately following the episode, upon information and belief, Defendants started advertising and selling dietary supplements that purport to contain acai berry on various websites by unlawfully and deceptively using Dr. Oz's and Ms. Winfrey's names, images, and voices.

24

84.    Most recently, on March 24, 2009, Dr. Oz appeared in an episode of *TOWS* entitled "Dr. Oz Extreme Life Extension," which focused on aging. In a segment of that episode, he discussed resveratrol, a compound found in some plants, fruits and seeds, and especially in the skin of grapes and certain grape-derived products (such as red wine) ("Resveratrol"). This segment of the March 24, 2009 episode of *TOWS* is hereinafter referred to as the "Resveratrol Clip."

85.    Immediately following the airing of the Resveratrol Clip, upon information and belief, Defendants started advertising and selling dietary supplements allegedly containing Resveratrol on various websites by unlawfully and deceptively using Dr. Oz's and Ms. Winfrey's names, images, and voices.

86.    Upon information and belief, Defendants are also advertising and selling anti-wrinkle and cellulite creams, as well as tooth-whitening products, by unlawfully and deceptively using Dr. Oz's and Ms. Winfrey's names, images, and voices.

87.    Critically, neither Dr. Oz nor Ms. Winfrey endorsed any specific dietary supplement, cosmetic, or drug, on *TOWS* or at any other time, and in fact, in certain cases, discouraged the use of certain dietary supplements, cosmetics or drugs altogether.

**Defendants' Unauthorized Use of Plaintiffs' Names, Pictures, Voices, Identities, Trademarks and Copyrighted Works**

88.    Defendants are unlawfully using Dr. Oz and Ms. Winfrey's names, pictures, voices, identities, personas, Plaintiffs Dr. Oz's, Harpo's and Zo Co's trademarks and Plaintiff Harpo's copyrighted works (together, "Plaintiffs' Property") in a number of ways, including, but not limited to, through search engine optimization through the use of embedded meta-tags and other methods; by purchasing keywords for sponsored links in search engines' advertising programs; through Internet and behavioral advertising methods, such as banner ads and affiliated marketing

25

programs; by using Dr. Oz's and/or Ms. Winfrey's names in domain names or webpage addresses themselves; by using Dr. Oz's and or Ms. Winfrey's names, images and voices on their websites; by purporting to be Dr. Oz and/or Ms. Winfrey; by claiming their Infringing Products have been recommended by Dr. Oz and/or Ms. Winfrey; and through videos containing images of Dr. Oz and/or Ms. Winfrey (together, "Defendants Unlawful Marketing"). These methods are explained in further detail below.

89.    Defendants are using Plaintiffs' Property without Plaintiffs' consent or authorization.

90.    Upon information and belief, Defendants did not seek Plaintiffs' written consent for use of Plaintiffs' Property in connection with the Infringing Products because they believed that they would not have received it, and because they wished to profit from this use without paying any compensation to Plaintiffs.

91.    Had their permission been sought, Plaintiffs would have flatly refused to consent to the use of Plaintiffs' Property in connection with the Infringing Products.

**Unauthorized and Deceptive Use in Search Engine Optimization: Sponsored Links and Meta-Tags**

92.    Defendants are using the Dr. Oz and Oprah names and marks in a number of ways to optimize their visibility on online search engines such as Google, Yahoo!, and MSN (now Bing).

93.    Upon information and belief, Defendants have embedded meta-tags containing the Dr. Oz and Oprah names and marks, and are engaging in other search engine optimization strategies that violate Plaintiffs' rights in the Dr. Oz and Oprah names and marks, such that links to Defendants' websites appear in results of online searches for Dr. Oz's and Ms. Winfrey's names.

94.    Upon information and belief, Defendants have bought keywords using the Dr. Oz and Oprah names and marks from online search engines, such that a search for "Dr. Oz" or "Oprah"

26

on their own and in conjunction with other words results in "sponsored links" to Defendants' websites. Copies of sample sponsored link results for "Dr. Oz" and "Oprah" on Google, Yahoo! and MSN/Bing printed on July 10, 2009 are attached as Exhibit 2. These sponsored links listings give the false impression that the listed websites are sponsored or otherwise approved of by Dr. Oz and Ms. Winfrey when they are not.

95.    In addition to purchasing keywords containing the Dr. Oz and Oprah names and marks, the titles and descriptions of Defendants' "sponsored links" contain the Dr. Oz and Oprah names and marks. For example, they bear titles such as "Free Resveratrol – Dr. Oz" and "Dr. Oz Recommends" and descriptions such as "Oz is Giving You Two Free Bottles of Resveratrol." This reinforces the false impression that the listed websites are sponsored or otherwise approved of by Dr. Oz and/or Ms. Winfrey.

**Unauthorized Use in Domain Names**

96.    Defendants have or are also using the Dr. Oz name and mark in the domain names for their websites and/or their web addresses for specific pages on their websites. A representative sample of these domain names and web addresses is attached as Exhibit 3.

97.    Defendants have or are also using the Oprah name and mark in the domain names for their websites and/or their web addresses for specific pages on their websites. A representative sample of these domain names and web addresses is attached as Exhibit 4.

98.    Many of these domain names are registered through third-party proxies, upon information and belief, in an effort to mask the identities of the true owners of the domain names and the operators of the offending websites, and to attempt to shield such owners from liability for their deceptive conduct.

27

**Unauthorized and Deceptive Use on Websites**

99.    Defendants are unlawfully using Plaintiffs' Property in a number of ways on their websites, such as: (a) prominently displaying Dr. Oz and/or Ms. Winfrey's name and marks as a false "branding" for their websites; (b) copying and distributing Harpo's copyrighted Resveratrol Clip, including Dr. Oz and/or Ms. Winfrey's voice, picture and identity; and/or (c) prominently displaying Dr. Oz and/or Ms. Winfrey's photographs, including still images from the Resveratrol Clip.

100.    In addition, Defendants' websites claim or suggest that Dr. Oz and/or Ms. Winfrey specifically endorse or promote the Infringing Products, when in fact they do not.

101.    For example, as shown below, on www.droz-resveratrol-trial.com and www.dr-oz-resveratrol-trial.com, Dr. Oz's name and image were illegally used to refer consumers to a Resveratrol product.





102.    In the examples above, which are nearly identical, Defendants purport to sell "the doctor OZ ResV," prominently display Dr. Oz's photograph, and purport to be websites belonging to Dr. Oz, such as by including a "Dr. Oz's Perfect Match Tool," and state that he is giving away trials of Defendants' product. All of this was done without Plaintiffs' authority. The examples above also prominently display the words "As Seen On Oprah/The Oprah Winfrey Show," misleadingly suggesting that this specific product was featured on *TOWS*, when in fact it was not.

103.    Similar examples of Defendants' Unlawful Marketing appear on websites that sell acai berry and colon cleanse dietary supplements, for example:

**A.  http://dr-oz-acai-berry-alert.com**



**B.**    http://www.ultimatecoloncleanse.com/30_day_trial/



104.    Attached as Exhibit 5 are equally egregious examples of additional websites that are part of the Defendants' Unlawful Marketing.    These websites sell or promote several different Infringing Products and prominently display Dr. Oz's photograph and purport to speak in Dr. Oz's voice.  For example, these websites make such misleading statements as, "if you have been following me on the Oprah show, you would have seen my segment on Resveratrol, and everything it can do for you."  These websites go on to make specific false claims, such as that "our review team ordered twenty (20) products that provided FREE TRIALS and the good news is that the products arrived on time and were in fact free!"  The websites also make specific health claims that are false, and which were never made by Dr. Oz on the Resveratrol Clip or in any other forum, such as that "a majority of patients were able to lose 15-35 lbs within a very short period of time and felt 50% healthier.  We are also very happy to report that there were no

31

Resveratrol side effects detected during this test." These websites also point to a particular Infringing Product, Resveratrol Ultra, and identifies it as "the Resveratrol that was showcased on Oprah," when in fact it was not.

105.    As set forth above, based upon information and belief, and on the identity or similarity of these websites, the fact that they are inter-linked, and the aggregation of these Infringing Products on certain websites, Defendants are alter egos of each other and/or are acting in concert with each other in connection with all the Defendants' Unlawful Marketing and Infringing Products.

## Fake Blogs and False News Reports

106.    Defendants are also deceiving consumers by the use of fake blogs and news reports that purport to report true accounts of positive results from use of the Infringing Products, when in fact, these websites are advertisements for the Infringing Products. In addition, these fake blogs and news reports falsely reference Ms. Winfrey and Dr. Oz as their "sources."

107.    One such example is a false news report accessible at the URL www.news13direct.com, which contains a story reported by Cathy Diaz of News 13 WKTV in New York City. A copy of the fake news report is attached as Exhibit 6. Upon information and belief, no such reporter or news station, however, exists in New York City. The website directs visitors to purchase Resveratrol Ultra.

## Unauthorized and Deceptive Use in Internet Advertising

108.    In addition, Defendants advertise their Infringing Products through contextual and behavioral advertising methods, whereby advertisements are directed to consumers based on their browsing history or the content on the sites they visit.

32

109.   These advertisements contain or use Plaintiffs' Property without authorization, and falsely claim or suggest that Plaintiffs endorsed or are affiliated with Defendants when in fact they are not.   Representative samples of deceptive "banner ads" using Plaintiffs' Property are attached as Exhibit 7.   Upon information and belief, these banner ads were placed by defendant CPX on behalf one or more of the defendant Does and ABC Companies 1 to 500 whose identities we have yet been able to ascertain.   Upon information and belief, CPX placed these banner ads with, among other websites, AOL, and falsely and fraudulently represented to AOL that Dr. Oz had authorized the use of his name and image in the advertisement when he had not. Through AOL's advertising service, these banner ads have appeared on various websites, including the LA Times website, www.latimes.com.

**Unauthorized and Deceptive Use in Unsolicited Email**

110.   Defendants advertise their Infringing Products through unsolicited spam emails using Plaintiffs' Property.   Examples of Defendants' spam emails are attached as Exhibit 8.

**Unauthorized and Deceptive Use in Videos**

111.   In addition, Defendants advertise their Infringing Products by distributing clips of *TOWS*, or making their own videos, which are distributed on various third-party websites, such as YouTube, which display user-generated video content ("UGC Video Sites").   These videos contain or use Plaintiffs' Property, and falsely claim or suggest that Plaintiffs endorsed or are affiliated with Defendants when in fact Plaintiffs have not endorsed and are not affiliated with Defendants.   Examples of Defendants' use of Plaintiff's Property on UGC Video Sites are attached as Exhibit 9.

**Unauthorized Use of Harpo's Copyrighted Works**

112.    Harpo is the owner of all rights, title and interest, including without limitation all copyrights, in and to various photographs of Oprah Winfrey (the Photographs") and the following episodes of *TOWS* (the "Episodes"): "Dr. Oz Extreme Life Extension" (containing the Resveratrol Clip), date of first publication March 24, 2009, Registration No. PA 1-633-071, with an effective date of registration within three months of first publication; "Insider's Secrets to Make You Younger and Healthier," date of first publication May 5, 2005, Registration No. PA 1-633-068; "Dr. Oz Reveals the Ultimate Checklist for Great Aging," date of first publication February 5, 2008, Registration No. PA 1-633-070; "Ask Dr. Oz," date of first publication February 13, 2007, Registration No. PA 1-635-926; "The Dr. Oz Diet," date of first publication November 2, 2006, Registration No. PA 1-635-927; "Dr. Oz 90 Day Live Longer, Feel Younger Plan," date of first publication May 1, 2006, Registration No. PA 1-635-929; "Look Ten Years Younger in 10 Days," date of first publication November 10, 2004, Registration No. PA 1-635-930; "The Great Debate: Should You Replace Your Hormones," date of first publication January 15, 2009, Registration No. PA 1-636-640. Copies of the recordation certificates for the assignment documents for the Photographs and representative samples of corresponding infringing uses are attached as Exhibit 10 and copies of the registration certificates for the Episodes and representative samples of corresponding infringing uses are attached as Exhibit 11.

113.    Harpo has complied in all respects with the copyright laws of the United States, and all other laws governing copyright, and the Photographs and Episodes are original works of authorship.

34

114.    Defendants have promoted the Infringing Products by, among other conduct, reproducing, distributing, publicly displaying and creating derivative works of the Photos and the Episodes on their websites, on UGC Video Sites and on third-party websites where Defendants' Unlawful Marketing appears, for example in banner ads.

115.    A non-exhaustive list of websites on which Defendants have copied, distributed, publicly displayed and created derivative works of the Resveratrol Clip, is attached as Exhibit 12.

**Defendants' Fraudulent Schemes Directed to the Public**

116.    Defendants' conduct does not stop at deceptively luring customers by unlawfully using Plaintiffs' intellectual property and other rights.

117.    Upon information and belief, Defendants are engaging in fraudulent credit card scams. For example, consumers are promised a free trial, or told they will only incur certain limited charges, but Defendants then charge additional amounts to consumers, without their authorization, after obtaining their credit card account information.    Defendants are also engaging in "negative option marketing," whereby consumers are required to automatically opt out of receiving unknown, recurring shipments and charges.  When consumers attempt to reach company representatives in order to cancel their "free" trials, or to reverse or stop charges that the consumer did not agree to pay, they are unable to do so, and/or Defendants continue to charge additional amounts to the credit cards.  In some cases, Defendants charge consumers and never send them any Infringing Products.

118.    Upon information and belief, Defendants are also engaging in affiliated marketing programs, whereby they re-route visitors to various websites in order to increase the amount of "click through" revenues they can receive.

35

119.    Upon information and belief, Defendants deliberately make themselves difficult to detect by failing to properly disclose their contact information, by obscuring their proper names and by changing their names, and by acting in concert in some other manner and/or as alter egos of each other which make them difficult to distinguish.

## Injuries Due to Defendants' Unlawful Conduct

120.    Defendants' Unlawful Marketing falsely suggests that Dr. Oz and/or Ms. Winfrey endorsed, sponsored and/or were otherwise affiliated or associated with the Infringing Products. Dr. Oz and Ms. Winfrey have never endorsed, sponsored or otherwise been affiliated or associated with the Infringing Products.

121.    Defendants' actions are likely to cause, and have caused, confusion and misled the public, which has been and is being led to believe that Dr. Oz and Ms. Winfrey endorse, sponsor and/or are otherwise affiliated or associated with the Infringing Products, when, in fact, they are not.

122.    In fact, Plaintiffs have received thousands of complaints from consumers, including consumers in New York and Illinois, reflecting their actual confusion and damage to Plaintiffs' reputation due to Defendants' conduct. Other organizations, such as the Better Business Bureau and www.complaintsboard.com, have also received thousands of similar complaints. For example, a recent article on Forbes.com, "A Headache for Dr. Oz" by Dirk Smillie, dated June 16, 2009, describes Defendants', including FWM's, deceptive conduct, details consumer complaints, and discusses the injury to Dr. Oz as a result. A copy of the article is attached as Exhibit 13.

123.    Defendants' conduct is especially damaging to Dr. Oz's professional reputation as a doctor. In fact, Dr. Oz's employer, Columbia University, received a complaint based on

36

websites that falsely claim that Dr. Oz has conducted studies on the Infringing Products and endorsed particular brands.

124.    The harm to consumers is both significant and widespread.    Thousands of consumers have made complaints of Defendants' unlawful credit card charges and the effects they have had on the consumers' financial health and credit scores, in addition to other injuries.    These complaints have been made, *inter alia,* directly to Plaintiffs, to consumer organizations such as the Better Business Bureau, www.complaintsboard.com and to law enforcement bodies.

125.    Upon information and belief, Defendants' unauthorized health claims also pose significant risk to public health and safety.

126.    Upon learning about Defendants' wrongful actions, Plaintiffs have undertaken various efforts to stop Defendants' conduct and to stem the harm to consumers, such as by sending cease and desist letters, fielding phone calls from viewers and the public, issuing statements on the Oprah.com website, working with Internet Service Providers and search engines, and cooperating with various government authorities to remove infringing content.    Plaintiffs have borne, and continue to bear, significant costs and expenses in undertaking these efforts.

127.    Despite these efforts, Defendants continue to violate Plaintiffs' rights and defraud the consuming public.    Upon information and belief, in many instances, upon receiving notice from Plaintiffs of their unlawful conduct, or in response to Plaintiffs' efforts to have infringing materials removed or domain names transferred, many of the Defendants have merely changed the domain names at which the websites reside to avoid detection.

128.    For example, shortly after Plaintiffs sent a Digital Millennium Copyright Act Notice to Google to request that the infringing materials on www.droz-resveratrol-trial.com and www.dr-oz-resveratrol-trials.com be removed, upon information and belief, Defendants registered a new

37

domain name through a proxy and posted the identical website at the domain name **www.dr-oz-suggests.com**:



129.    Defendants' conduct of changing the domain names at which the websites reside to avoid detection continues to this day.  For example, although the web site shown above is no longer accessible, a similar web site can be accessed at **www.dr-oz-resv.net**.  A screenshot from **www.dr-oz-resv.net,** captured on August 17, 2009, follows below:



## COUNT I
### (Violation of Right of Publicity and Right of Privacy, N.Y.C.R.L §§ 50-51)
### (By Plaintiff Dr. Oz)

130.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

131.    Defendants used Dr. Oz's name, image, voice and/or persona in connection with advertising the Infringing Products throughout the United States, including both within and outside of the State of New York.

132.    Dr. Oz did not consent, in writing or otherwise, to Defendants' use of his name, image, voice and/or persona in connection with the Infringing Products.

39

133.   As a result, Defendants have violated Dr. Oz's right of publicity and right of privacy under Section 51 of the Civil Rights Law of the State of New York (the "CRL") and related statutes in other states and territories.

134.   Defendants knowingly used Dr. Oz's name, image, voice and/or persona for advertising purposes without obtaining his written consent.

135.   As a direct and proximate result of Defendants' actions, Plaintiff Dr. Oz has been damaged in an amount to be determined at trial.

136.   By reason of the foregoing, plaintiff Dr. Oz is entitled to punitive or exemplary damages in an amount to be determined at trial, as well as disgorgement of Defendants' profits, receipt of plaintiff's costs, including reasonable attorneys' fees, and all other available relief under the CRL and related statutes.

### COUNT II
### (Violation of Right of Publicity, 765 ILCS 1075/1 et seq.)
### (By Plaintiff OW)

137.   Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

138.   Defendants used Ms. Winfrey's identity, including her name, image, voice and/or persona in connection with advertising the Infringing Products throughout the United States, including both within and outside of the States of New York and Illinois.

139.   OW and/or Ms. Winfrey did not consent, in writing or otherwise, to Defendants' use of her identity in connection with the Infringing Products.

140.   As a result, Defendants have violated OW's rights in Ms. Winfrey's right of publicity under the Illinois Right of Publicity Act and related statutes in other states and territories.

40

141.    Defendants knowingly and willfully used Ms. Winfrey's name, image, voice and/or persona for advertising purposes without obtaining her written consent.

142.    As a direct and proximate result of Defendants' actions, Plaintiff OW has been actually damaged in an amount to be determined at trial.

143.    By reason of the foregoing, Plaintiff OW is entitled to punitive or exemplary damages in an amount to be determined at trial, as well as disgorgement of Defendant' profits, plaintiff's costs, including reasonable attorneys' fees, and all other available relief under the Illinois Right of Publicity Act and related statutes.

144.    Plaintiff OW is also entitled to injunctive relief under the Illinois Right of Publicity Act and related statutes.

### COUNT III
**(Direct, Contributory and/or Vicarious Trademark Infringement
under Section 32(1) of the Lanham Act)
(By Plaintiff Harpo)**

145.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

146.    Upon information and belief, Defendants have either used the OPRAH marks directly on their websites without Harpo's consent, and/or with knowledge of the infringement, intentionally induced others to infringe the marks, continued to supply Infringing Products to others with knowledge or reason to know that they are engaging in trademark infringement, have profited from the infringement, are able to exercise direct control over the affiliates' infringement, had the ability to stop their affiliates' infringement, monitor their affiliates' actions that lead to sales of the Infringing Products, could take simple measures to prevent their affiliates' infringement and yet fail to do so, and there is an apparent or actual partnership between Defendants and the

41

direct infringers, giving each the authority to bind the other or exercise joint control over the products at issue.

147.    Defendants' use of the OPRAH marks is likely to confuse or deceive the public in the United States into believing that the unauthorized activities of Defendants originate from, are associated with, or are licensed, sponsored or authorized, or otherwise approved by Harpo, all to the damage and detriment of the reputation and good will in the OPRAH marks.

148.    Defendants' use constitutes direct, contributory and/or vicarious trademark infringement under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

149.    Defendants' acts were done intentionally and with knowledge of Harpo's rights, and thus constitute deliberate and willful infringement. This is an exceptional case that warrants the award of attorneys' fees.

150.    As a consequence of Defendants' willful misconduct, Harpo is entitled to injunctive relief as set forth below, and to an award against Defendants in the amount of three times Harpo's damages (which include damage to its marks and the reasonable value of a license), such sum above Defendants' profits arising from the infringement as the court deems just, destruction of all infringing materials, and Harpo's costs and attorneys' fees incurred in connection with this action.

## COUNT IV
### (Trademark Dilution by Blurring and Tarnishment under Section 43(c) of the Lanham Act)
### (By Plaintiff Harpo)

151.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

152.    The OPRAH marks are distinctive and are famous as they are widely recognized by the general consuming public of the United States as a designation of the source of the goods and services of Plaintiffs Ms. Winfrey and Harpo.

153.    Defendants began making use of the OPRAH Marks long after they became famous.

154.    Defendants' use of the OPRAH Marks impairs the distinctiveness (blurs) and harms the reputation of (tarnishes) the OPRAH Marks.

155.    Defendants willfully intended to trade on the reputation of and dilute the distinctiveness of the famous OPRAH Marks. This is an exceptional case that warrants the award of attorneys' fees.

156.    Defendants' use of the OPRAH Marks without Harpo's consent, as described above, and/or causing, inducing or materially contributing to such use constitutes trademark dilution under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

157.    Plaintiff Harpo is accordingly entitled to injunctive relief and an award against defendants in the amount of three times its damages (which include damage to its marks), such sum above Defendants' profits arising from the infringement as the court deems just, destruction of all infringing materials, together with Harpo's costs and attorneys' fees incurred in connection with this action.

## COUNT V
### (Direct, Contributory and/or Vicarious Trademark Infringement under Section 43(a) of the Lanham Act) (By Plaintiff Zo Co)

158.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

159.    Upon information and belief, Defendants have either used the DR. OZ mark directly on their websites without Zo Co's consent and/or with knowledge of the infringement, intentionally induced others to infringe the marks, continued to supply Infringing Products to others with knowledge or reason to know that they are engaging in trademark infringement, have profited from the infringement, are able to exercise direct control over the affiliates' infringement, had the ability to stop their affiliates' infringement, monitor their affiliates' actions that lead to sales of the Infringing Products, could take simple measures to prevent their affiliates' infringement and yet fail to do so, and there is an apparent or actual partnership between Defendants and the direct infringers, giving each the authority to bind the other or exercise joint control over the products at issue.

160.    Defendants' conduct constitutes direct, contributory and/or vicarious trademark infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

161.    Defendants' acts were done intentionally and with knowledge of Plaintiff Zo Co's rights, and thus constitute deliberate and willful infringement. This is an exceptional case that warrants the award of attorneys' fees.

162.    As a result of Defendants' deliberate and willful infringement, Plaintiff Zo Co has suffered irreparable harm. Plaintiff Zo Co has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff Zo Co will continue to suffer irreparable harm and injury to its reputation and good will. In addition, as a result of this trademark infringement, Plaintiff Zo Co has sustained and is continuing to sustain damages in an amount to be determined at trial, plus interest, costs and attorneys' fees.

44

<u>COUNT VI</u>
**(False Designation of Origin, False Endorsement and Sponsorship and Unfair Competition under Section 43(a) of the Lanham Act)**
**(By Plaintiffs Zo Co and Harpo)**

163.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

164.    Defendants' use of Plaintiffs' names, marks, and identities, without their consent, as described above, and/or causing, inducing or materially contributing to such use, constitutes false designation of origin, and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

165.    By disseminating the Defendants' Unlawful Marketing without authorization, Defendants have falsely represented to the public that Plaintiffs endorse, sponsor and/or are otherwise affiliated or associated with Defendants' goods, services or other commercial activities, when in fact that is not the case.

166.    Defendants' acts were designed to entice consumers to purchase the Infringing Products, and their materially false representations were likely to deceive or confuse, and have deceived or confused, the public into believing that Plaintiffs endorse, sponsor and/or are otherwise affiliated or associated with Defendants, when in fact that is not the case.

167.    Defendants availed themselves of the advantages of Plaintiffs' extensive efforts, goodwill and fine reputation willfully and deliberately, with knowledge of Plaintiffs' rights, and with the intent to unfairly commercially benefit Defendants' at Plaintiffs' expense. This is an exceptional case that warrants the award of attorneys' fees.

168.    Plaintiffs have been damaged by Defendants' unauthorized use of their names, marks and identities.

45

169.    Upon information and belief, Defendants have derived substantial revenue and profits as a result of their conduct, at Plaintiffs' expense.

170.    As a consequence of Defendants' willful misconduct, Plaintiffs are entitled to injunctive relief and to an award against defendants in the amount of three times Plaintiffs' damages, such amount to be determined at trial, destruction of all infringing materials, and plaintiffs' costs and attorneys' fees incurred in connection with this action.

**COUNT VII**
**(Cybersquatting under the Anticybersquatting Consumer Protection Act,**
**15 U.S.C. § 1125(d)(1)(A))**
**(By Plaintiffs Zo Co and Harpo)**

171.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

172.    Defendants' registration of domain names using Zo Co's and Harpo's marks, including those in Exhibits 3 and 4, constitutes cybersquatting in violation of Section 1125 of the Anticybersquatting Consumer Protection Act, 15 U.C.S. § 1125(d)(1)(A).

173.    The DR. OZ mark and OPRAH marks are inherently distinctive.

174.    The domain names registered by Defendants are identical and/or confusingly similar to the DR. OZ and OPRAH marks.

175.    Upon information and belief, Defendants registered the above-described domain names in bad faith with an intent to profit. Defendants' bad-faith in registering the infringing domain names is evidenced by, among other things, Defendants' registration of multiple domain names which Defendants know are identical or confusingly similar to Plaintiffs' marks. Upon information and belief, Defendants were fully aware of Plaintiffs' strong marks in DR. OZ and OPRAH before they registered the domain names at issue.

176.   Furthermore, for the following reasons, Defendants' actions have been taken in bad faith with an intent to profit:  (a) Defendants do not have any trademark or intellectual property rights in the domain names; (b) the domain names do not contain the legal name of Defendants or a name commonly used to identify Defendants; (c) Defendants did not make noncommercial or fair use of the DR. OZ or OPRAH marks in a site accessible under the domain name; and (d) Defendants intended to divert consumers to websites that could harm the goodwill represented by the DR. OZ and OPRAH marks for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

177.   As a result of Defendants' actions, Plaintiffs have suffered irreparable harm.  Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to their goodwill and reputations.

178.   As a consequence of Defendants' willful misconduct, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using or registering as a domain name Plaintiffs' names and trademarks, alone or in combination with other words, and ordering Defendants to transfer any such domain names to Plaintiffs, and to an award against Defendants in the amount of three times plaintiffs' damages, such sum above Defendants' profits arising from the infringement as the court deems just, destruction of all infringing materials, and plaintiffs' costs and attorneys' fees incurred in connection with this action.  In the alternative, Plaintiffs are entitled to an award of statutory damages in the amount of up to $100,000 per domain name, or as the court considers just but no less than $1,000 per domain name, plus costs and attorney's fees.

## COUNT VIII
### (Direct, Contributory and/or Vicarious Copyright Infringement Under The Copyright Act)
### (By Plaintiff Harpo)

179.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

180.    Harpo owns valid copyrights in the registered Resveratrol Clip and all of the infringed *TOWS* episodes and images of Oprah, including the works identified in Exhibits 10 and 11, which are original works of authorship.

181.    Defendants had access to Harpo's copyrighted works, and intentionally copied and distributed them, or portions or still images from them, without Harpo's consent, and/or had knowledge of infringing activity and induced, caused, or materially contributed to it, and/or induced the infringement, and/or had the right and ability to supervise the infringing activity and had a direct financial interest in the activity.

182.    Defendants' use constitutes direct copyright infringement and/or contributory and/or vicarious infringement under the Copyright Act.

183.    Defendants' acts were done intentionally and with knowledge of Harpo's rights, and thus constitute deliberate and willful infringement.

184.    As a consequence of Defendants' willful misconduct, plaintiff Harpo is entitled to injunctive relief as set forth below; to an award against Defendants in the amount of (i) Harpo's damages and Defendants' profits arising from the infringement, or in the alternative, (ii) statutory damages in the amount of up to $150,000 per work infringed; destruction of all infringing materials; and plaintiffs' costs and attorneys' fees incurred in connection with this action.

## COUNT IX
### *(Common Law Unfair Competition / Unjust Enrichment)*

185.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

186.    Defendants' use of Plaintiffs' Property without Plaintiffs' consent, as described above, and/or causing, inducing or materially contributing to such use constitutes unfair competition under New York and Illinois common law.

187.    As a direct and proximate result of the foregoing, Defendants have been unjustly enriched at the expense of Plaintiffs.

188.    Defendants' acts were done intentionally and with knowledge of Plaintiffs' rights, and therefore in bad faith.

189.    As a result of Defendants' deliberate and willful conduct, Plaintiffs have suffered irreparable harm. Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their reputations and good will. In addition, Plaintiffs have sustained and are continuing to sustain damages in an amount to be determined at trial.

## COUNT X
### (Violation of Section 349 of New York General Business Law)

190.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

191.    Defendants' aforesaid acts constitute deceptive acts and practices in the conduct of business in willful and knowing violation of New York General Business Law § 349.

49

192.    Plaintiffs have no adequate remedies at law to compensate them for all the damages that have been caused by defendants' wrongful acts, and that will be caused if Defendants' wrongful acts are not immediately enjoined.

193.    Plaintiffs have suffered monetary damages as a result of Defendants' wrongful acts, in an amount to be proved at trial.

**COUNT XI**
**(Violation of Section 350 of New York General Business Law)**

194.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

195.    New York General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

196.    Defendants' statements, as set forth above, were consumer-oriented and made in the conduct of business, trade or commerce in New York.

197.    Defendants' statements were misleading in a material respect and were and/or are likely to mislead consumers.

198.    Defendants' statements constitute false advertising in willful and knowing violation of New York General Business Law § 350.

199.    Defendants' statements caused harm to Plaintiffs and to the public at large.

200.    Plaintiffs have no adequate remedy at law to compensate them for all the damages that have been caused by Defendants' false advertising and that will be caused should those acts not immediately cease.

201.    Defendants have suffered money damages as a result of Defendants' false advertising, in an amount not yet ascertainable but which will be determined at trial.

50

## COUNT XII
### (Violation of Illinois Uniform Deceptive Trade Practices Act)
### (By Plaintiffs OW and Harpo)

202.    Plaintiffs repeat and reallege the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

203.    Defendants' conduct as described above constitutes deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510 *et seq.*

204.    As a result of Defendants' unlawful acts, Plaintiffs have suffered, and continue to suffer irreparable harm and pecuniary damages in an amount yet to be determined.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant an order or orders:

A.    Preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, employees, successors and assigns, and all other persons acting on their behalf or under their control in active concert and participation with any of them, from (a) using Plaintiffs' Property to sell or market any product or service in any and all media and forums, or using Plaintiffs' names and trademarks, alone or in combination, in any domain name; and (b) doing any other act likely to cause the public to believe that Defendants' business or services, in any way, originate from, are associated or affiliated with or are sponsored by one or all Plaintiffs; and

B.    Directing Defendants to (a) withdraw all advertising and promotions in any and all media that include the Plaintiffs' Property; (b) destroy all advertising, marketing materials and other tangible items that incorporate Plaintiffs' Property and provide a certificate of such destruction; (c) transfer all domain names containing Plaintiffs' names or marks to Plaintiffs; and (d) issue a press release and run prominent corrective advertising alerting the

51

public and consumers to the fact that Plaintiffs are not, and never have been, associated with Defendants.

C.      Awarding damages in an amount to be proven at trial, caused by Defendants' copyright and trademark infringement and/or contributory infringement, dilution, unfair competition, and invasion of right of privacy and publicity, and other misconduct as specified herein. In the alternative, awarding statutory damages in the amount of up to $150,000 per work infringed under the Copyright Act and up to $100,000 per domain name under the Anti-Cybersquatting Consumer Protection Act.

D.      Ordering that Defendants make restitution to Plaintiffs for any unjust enrichment caused by virtue of their unlawful conduct.

E.      Awarding Defendants' profits arising out of Defendants' willful copyright and trademark infringement and contributory infringement, false representations, use of false designations of origin, dilution, invasion of right of privacy and right of publicity.

F.      Awarding treble damages to be assessed against Defendants and such amount above profits as the court finds just under the Lanham Act, 15 U.S.C. § 1117, exemplary damages under New York Civil Rights Law § 51, and punitive damages under the Illinois Right of Publicity Act.

G.      Awarding plaintiffs interest and costs of this action together with statutory attorneys' fees under the Illinois Right of Publicity Act, 765 ILCS § 1075/55, New York Civil Rights Law § 50-c, the Lanham Act, 15 U.S.C. § 1117, the Copyright Act, 17 U.S.C. § 505, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/3, and New York General Business Law § 349(h).

H.    Granting such other and further relief as this Court may deem just and proper.


Dated:    New York, New York
          August 18, 2009


                              DAVIS & GILBERT LLP


                              By: _____
                                  Marc Rachman (mrachman@dglaw.com)
                                  Shirin Keen (skeen@dglaw.com)
                                  Sean Cameron (scameron@dglaw.com)
                              1740 Broadway
                              New York, New York 10019
                              (212) 468-4853

                              *Attorneys for Plaintiffs*


53