Swp-in, J

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                   │
│ DATE FILED:  0 3 MAY 2010            │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. MEHMET OZ, et al.,

        Plaintiffs,

    v.

FWM LABORATORIES, INC., et al.,

        Defendants.

Index No. 09 Civ. 7297 (LTS)

**STIPULATED ORDER OF
PERMANENT INJUNCTION
AND VOLUNTARY DISMISSAL**

      WHEREAS, Plaintiffs Dr. Mehmet Oz, Zo Co 1, LLC, OW Licensing Company, LLC, and Harpo, Inc. (collectively, "Plaintiffs"), filed their complaint for a permanent injunction, civil penalties, and other equitable relief against, among others, Defendant JDW MEDIA, LLC ("Defendant"), alleging violations of N.Y.C.R.L. §§ 50-51, 765 ILCS 10751/1 et seq., 15 U.S.C. §§ 1114(1), 1125(a), 1125(a)(1)(A), 1125(c), 1125(d)(1)(A), 17 U.S.C. § 106, common law unfair competition, common law unjust enrichment, and N.Y. Gen. Bus. Law §§ 349, 350, 815 ILCS 510 et seq. (the "Action");

      WHEREAS, Plaintiffs and Defendant and the Representatives and successors of Defendant (collectively, the "Parties") agreed to settlement of this Action without adjudication of any issue of fact or law and without Defendant admitting liability for any of the matters alleged in the complaint; and

      WHEREAS, the Parties have reached a settlement of this action, which is formalized in a separate confidential settlement agreement (the "Settlement Agreement"), and in connection with said Settlement Agreement, have agreed to the entry of this Stipulated Order of Permanent Injunction and Voluntary Dismissal.

THEREFORE, it is hereby stipulated and agreed by and between Plaintiffs and Defendant, and Ordered by this Court, as follows:

## I. JURISDICTION AND WAIVER

A.    This Court has jurisdiction over the Parties and the subject matter of the Action.

B.    Venue is proper as to all Parties.

C.    Defendant hereby waives all rights to appeal or otherwise challenge or contest the validity of this order.

D.    The Parties will bear their own legal fees.

## II. DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.    "Advertisement(s)" shall mean any means by which Defendant or its Representatives, as defined below, promote Defendant's or another Person's, as defined below, Product(s), as defined below, or direct consumers to a physical or online destination for the purpose of offering Defendant's or another Person's Product(s) for sale, including but not limited to web sites located at unique universal resource locators ("URL(s)"), and all audio, visual, and literary material contained within such web sites and any part of the domain name of such web sites; online search engine sponsored link or advertising programs, such as Google AdWords, Google AdSense, Microsoft Bing Search Advertising, and Yahoo! Search Marketing; banner ads; email; television commercials; radio

commercials; interstitial commercials; videos, whether viral or stationary; sponsored articles; testimonials; blogs; meta tags; and print materials, such as sales sheets, newspaper and/or magazine advertisements, and brochures.

B.  "Affiliate" shall mean any Person, as defined below, who participates in an Affiliate Program, as defined below, as an affiliate or publisher.

C.  "Affiliate Network" shall mean any Person, as defined below, who provides Defendant with Affiliates for Defendant's Affiliate Program, as defined below, or whom Defendant contracts with as an Affiliate to promote the Products.

D.  "Affiliate Program" shall mean any agreement whereby any Person, as defined below, agrees, pursuant to terms and conditions agreed to by Defendant and such Person or between such Person and an Affiliate Network, to provide Defendant or another Person with or to refer to Defendant or another Person potential or actual customers for a fee via the creation or facilitation of Advertisements by Affiliates.

E.  "Person" shall mean a natural person or a corporation, partnership, proprietorship, limited liability company, or other organization or legal entity, including an association, cooperative, agency, or other group or combination acting as an entity.

F.  "Product(s)" shall mean any goods or services manufactured, distributed, sold and/or marketed, now or in the future, by Defendant and its Representatives, including, but not limited to AcaiBurn, DazzleWhite, PureCleanse Pro, and Resveatrol.

3

G.      "Representative(s)" shall mean Defendant's owners, shareholders, partners, members, officers, agents, servants and employees, acting for or on behalf of Defendant.

### III. PERMANENT INJUNCTION

It is hereby ordered that:

A.      From the entry date of this Order forward, Defendant and Defendant's Representatives are hereby permanently enjoined from using the names, pictures, voices, identities, likenesses and/or images of Oprah Winfrey and Dr. Mehmet Oz in any Advertisement for the Product(s) ("Infringing Material") without Plaintiffs' authorization.  Such prohibited use includes, but is not limited to, the use of Oprah Winfrey's and/or Dr. Oz's names, and any formatives thereof, in any part of a  domain name, as a keyword in an advertising program or as a metatag or hidden text on a webpage.

B.      From the entry date of this Order forward, Defendant and Defendant's Representatives are hereby permanently enjoined from using the trademarks OPRAH, THE OPRAH WINFREY SHOW, O, DR. OZ, any other trademarks owned by Plaintiffs, or any formatives thereof, whether currently owned or acquired after the date of this Agreement, in any Advertisement for the Product(s) without Plaintiffs' authorization.  Such prohibited use includes, but is not limited to, the use of the trademarks OPRAH, THE OPRAH WINFREY SHOW, O, DR. OZ, any other trademarks owned by Plaintiffs, and any formatives thereof, in any

4

part of a domain name, as a keyword in an advertising program or as a metatag or
hidden text on a webpage.

C.    From the entry date of this Order forward, Defendant and Defendant's
Representatives are hereby permanently enjoined from using any material, visual,
literary, audio or otherwise, to which Plaintiffs own the copyright, whether
currently owned or acquired after the date of this Agreement, in any
Advertisement for the Product(s) without Plaintiffs' authorization.

## IV. COMPLIANCE MONITORING BY DEFENDANT AND ITS REPRESENTATIVES

It is further ordered that Defendant and its Representatives are hereby permanently restrained
and enjoined from failing to immediately take the steps set forth in this Paragraph, as applicable,
to ensure compliance with Paragraph III of this Order.

A.    If Defendant has or begins an Affiliate Program, providing a copy of this Order,
or a summary of the material terms of Paragraph III of this Order, to each
Affiliate Network and/or any Affiliate with which Defendant contracts directly
that Defendant uses going forward in any Affiliate Program for Defendant and
requesting that each Affiliate Network in Defendant's Affiliate Program, by its
contract with Defendant, provide each of the Affiliates in its network that it
includes in Defendant's Affiliate Program with a copy of this Order, or a
summary of the material terms of Paragraph III of this Order, or otherwise
prohibit use of any Infringing Material by its contract with its affiliates.

B.     If Defendant has or begins an Affiliate Program, requesting each Affiliate
Network and/or any Affiliate with which Defendant contracts directly that
Defendant uses in its Affiliate Program to provide the following identifying
information to Defendant, which Defendant shall maintain for as long as it uses
such Affiliate Network:

1.     If a natural person, Affiliate Network's first and last name, valid physical
address, country, telephone number, email address and bank account
information (where used to make payments to that Person).

2.     If a corporation, partnership, proprietorship, limited liability company, or
other organization or legal entity, including an association, cooperative,
agency, or other group or combination acting as an entity, the Affiliate
Network's name and any and all names under which it does business, state
of incorporation, registered agent, and the first and last name, valid
physical address, country, telephone number, and email address of at least
one natural person who owns, manages, or controls the Affiliate Network,
bank account information (where used to make payments to that Person)
and all sub-ids assigned to the Affiliate Network.

3.     In any circumstances in which Defendant only has access to Affiliates
through an Affiliate Network, requesting that each Affiliate Network, by
its contract with Defendant, obtain and maintain from the Affiliates in
Defendant's Affiliate Program the identifying information set forth in
Paragraph IV.B.1 & 2 above, which shall be required to be obtained and

6

maintained by the Affiliate Network prior to that Affiliate's participation in Defendant's Affiliate Program.

C.   If Defendant has or begins an Affiliate Program, requesting from each Affiliate Network that wishes to continue to participate or to begin to participate in Defendant's Affiliate Program (1) an express written agreement to comply with the terms of this Order, and (2) an acknowledgement of receipt of this Order and/or its material terms. The Parties agree that electronic acknowledgement or acceptance specifically satisfies the requirements of this Paragraph. If Defendant only has access to the Affiliates through an Affiliate Network(s), then it shall request, as part of its contract with the Affiliate Network(s), that the Affiliate Network(s) obtain and maintain the same information set forth above in this paragraph IV.C from the Affiliate Network's affiliates that are used in Defendant's Affiliate Program and certify to Defendant in writing that it has obtained such information prior to any such affiliate being used in Defendant's Affiliate Program.

D.   Each week, for a minimum of 14 hours per week, including at least 2 hours in the evenings past 6 pm and 2 hours during the weekend, Defendant will arrange for a person or service to search the Internet for a commercially reasonable amount of time for unauthorized uses of the trademarks (including formatives thereof), names, pictures, voices, identities, likenesses and/or images of Plaintiffs and Oprah Winfrey in any Advertisement(s) for the Product(s).

7

E.   If, during the course of searching the Internet or otherwise, Defendant discovers or is notified that an Affiliate advertising one of the Products is making an unauthorized use of the trademarks (including formatives thereof), names, pictures, voices, identities, likenesses and/or images of plaintiffs or Oprah Winfrey (the "Offending Advertising"), it shall notify the appropriate Affiliate Network in writing and demand that such Affiliate Network cause the Offending Advertisement to be removed within seventy-two (72) hours; it shall notify Plaintiffs' Authorized Representative of the occurrence of the Offending Advertisement and its compliance with its obligations under this paragraph IV.F of this Order; and it shall not pay the Affiliate and/or the Affiliate Network for the Offending Advertisement, including any payments for leads, "click-throughs" or sales resulting therefrom.  If the Affiliate Network does not cause the Offending Advertisement to be removed within seventy-two (72) hours of receiving notice of the Offending Advertisement from Defendant, Defendant shall so notify Plaintiffs' Authorized Representative, and make commercially reasonable efforts to provide a screenshot of the Offending Advertisement along with the identity and contact information of the appropriate Affiliate Network.

F.   Defendant shall promptly and fully investigate any information received by Defendant, Defendant's Affiliates, Defendant's Affiliate Network(s), Plaintiffs or any other third party regarding an Advertisement that does not comply with this Order.  However, notwithstanding the requirements of this Paragraph, Defendant shall not be in violation of this Paragraph if, within two (2) business days after receiving such information, Defendant terminates the Affiliate or the Affiliate

Network that created or facilitated the non-complying Advertisement, provides notice and all information related to the Affiliate and/or the Affiliate Network collected pursuant to Paragraphs IV.A and IV.B to Plaintiffs, does not pay the Affiliate and/or the Affiliate Network for the offending Advertisement, including any payments for leads, "click-throughs" or sales resulting therefrom, and does not reinstate the Affiliate(s) or Affiliate Network(s) unless Defendant agrees in writing provided to Plaintiffs that Defendant will be directly responsible for any further breaches of this Order by the offending Affiliate and/or Affiliate Network.

G.    If Defendant has or begins an Affiliate Program, Defendant shall immediately terminate from Defendant's Affiliate Program, and cease payment to, any Affiliate or Affiliate Network who Defendant reasonably concludes (i) is violating or has violated any provision of this Order on more than two (2) occasions; or (ii) is creating or publishing an Advertisement that violates this Order, and who fails to cure within five (5) business days of receipt of notice and opportunity to cure such violation. Defendant shall not reinstate any Affiliate or Affiliate Network who has been so terminated unless Defendant agrees in writing provided to Plaintiffs that Defendant will be directly responsible for any further breaches of this Order by the offending Affiliate and/or Affiliate Network. Defendant shall not be in violation of this Paragraph unless Defendant knew or should have known that the reinstated Affiliate or Affiliate Network had previously been terminated.

H.    Notwithstanding anything set forth above, in the event that it comes to Defendant's attention that an Affiliate has used an Offending Advertisement three

9

(3) times, then Defendant will contact the Affiliate or the appropriate Affiliate Network and withhold all payments or request that such Affiliate Network cause all payments be withheld to such Affiliate in relation to such Offending Advertisements and any future such Offending Advertisement(s) and it shall notify Plaintiffs' Authorized Representative of such occurrence.

## V. COMPLIANCE MONITORING BY PLAINTIFFS

It is further ordered that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.    In the event of any alleged violation of this Order by Defendant or its Representatives, within ten (10) business days of receipt of written notice from Plaintiffs or a representative of Plaintiffs, Defendant shall submit a written report relating to such alleged violation, sworn to under penalty of perjury, and produce documents related to such alleged violation, identified by Plaintiffs in their written notice, for inspection and copying.

B.    For the purposes of this Order, Plaintiffs shall, unless otherwise directed by a representative of Defendant, mail all written notifications to any Defendant to the following address:

Jesse D. Willms
1021018 ALBERTA, LTD
85 Cranford Way # 204
Sherwood Park, Alberta
T8H 0H9

10

Canada

With a copy to:

James A. Kaminski, Esq.,
Hughes & Bentzen, PLLC,
1100 Connecticut Ave., NW
Suite 340
Washington, DC 20036
Fax: 202-293-8973
jkaminski@hughesbentzen.com


## VI. COMPLIANCE RECORDS TO BE MAINTAINED BY DEFENDANT

It is further ordered that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.    For a period of two years from the date of this Order, Defendant shall notify Plaintiffs of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger or other action that would result in the emergence of a successor entity that engages in any acts or practices subject to this Order; the creation or dissolution of a subsidiary or parent that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; and a change in the corporate name or address, within thirty (30) of such changes having taken place.

B.    For a period of two years from the date of this Order, Defendant shall notify Plaintiffs of any new Products that it manufactures, distributes, sells and/or markets using Advertising and/or an Affiliate Program.

11

C.    One hundred eighty (180) days after the date of entry of this Order and each hundred eighty (180) days thereafter for a period of two (2) years, Defendant shall provide a written report to Plaintiffs, sworn to under penalty of perjury, setting forth in detail the manner and form in which it has complied and is complying with this Order. This report shall consist of, as applicable:

1.    A copy of each acknowledgement of receipt of this Order and/or its material terms, obtained pursuant to Paragraph IV.C of this Order.

2.    Any changes required to be reported pursuant to Paragraph VI.A.

3.    A list that identifies every Affiliate Network participating in Defendant's Affiliate Program since entry of this Order that Defendant is able to identify.

4.    A list of all names under which Defendant has done business since entry of this Order.

5.    A list of all domain names and web page addresses Defendant has owned or operated since entry of this Order.

6.    A copy of each non-identical form contract used in Defendant's Affiliate Program (notwithstanding the name given to such program by Defendant) at any time since the execution of this Order.

7.    A summary of Defendant's efforts to comply with paragraph IV.D above.

D.   For the purposes of this Order, Defendant shall, unless directed otherwise by a representative of Plaintiffs, mail all written notifications to the Plaintiffs to the following address:

William L. Becker, Esq.
General Counsel
Harpo, Inc.
110 North Carpenter Street
Chicago, IL 60607
Fax: (312) 733-3896
bbecker@harpo.com

With a copy to:

Marc Rachman, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, New York 10019
Fax: 212-468-4888
Email: mrachman@dglaw.com

## VII.   DISTRIBUTION OF ORDER BY DEFENDANT

It is further ordered that, for a period of two years from the date of entry of this Order, Defendant shall deliver copies of this Order as directed below:

A.   Defendant shall deliver a copy of this Order to its Officers, Directors, and Managers. Defendant shall also deliver a copy to all of its employees, agents, independent contractors, and persons whose supervisory or performance duties relate directly to Defendant's obligations under this Order. For current personnel, delivery shall be within ten (10) business days of Defendant's receipt of an entered, executed copy of this Order. For new personnel, delivery shall occur prior to them assuming their responsibilities.

B.    Defendant must secure a signed and dated written or electronic statement (which signature may be obtained electronically provided that the signature would comply with the signature requirements of the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 et seq.), acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy or summary of this Order pursuant to this Paragraph.

C.    Notwithstanding the obligations set forth in this Paragraph, Defendant's obligations with respect to distribution of this Order to each Person who participates in Defendant's Affiliate Program are set forth in Paragraphs IV.A and IV.C.

## VIII.  LIQUIDATED DAMAGES FOR NON-COMPLIANCE

A.    The Parties acknowledge that the monetary damages that Plaintiffs would suffer as a result of a material breach by Defendant of the terms of this Order are not readily ascertainable at the time of their stipulating to the entry of this Order.

B.    In the event of a material breach by Defendant (not by an Affiliate Network or Affiliate in Defendant's Affiliate Program or any other third party) of the terms of this Order that is not cured within ten (10) business days of Defendant becoming aware of such breach, in addition to any injunctive relief that Plaintiffs may be entitled to as a result of such breach, the Parties agree that Defendant shall be liable to Plaintiffs for the liquidated sum of twenty-five thousand dollars ($25,000) per material breach, as the Parties agree that such sum is reasonably proportionate to Plaintiffs' foreseeable losses for a material breach of this Order.

14

C.     In the event of a dispute arising out of this Order, the prevailing party shall be entitled to reimbursement from the non-prevailing party of its costs, including all reasonable attorneys' fees.

## IX.   DISMISSAL OF ACTION AGAINST DEFENDANT

A.     The Parties hereby stipulate and agree, pursuant to Rule 41(a)(1) & (2) of the Federal Rules of Civil Procedure, that this action is dismissed, against the Defendant, with each party to bear its own costs and its own attorneys' fees.

B.     This Court shall maintain jurisdiction over the parties in this matter in connection with enforcement of ~~their Settlement Agreement and~~ this Stipulated Order of Permanent Injunction and Voluntary Dismissal.

The undersigned, on behalf of themselves or their respective clients, hereby stipulate and consent to the entry of this Order:

**DAVIS & GILBERT LLP**
Attorneys for Plaintiffs

By: _____
Marc Rachman (mrachman@dglaw.com)
Shirin Keen (skeen@dglaw.com)
Sean Cameron (scameron@dglaw.com)
1740 Broadway
New York, NY 10019
(212) 468-4800
(212) 468-4888 fax

SO ORDERED:

**HUGHES & BENTZEN, PLLC**
Attorneys for Defendant

By: _____
James A. Kaminski (jkaminski@hughesbentzen.com)
Michael P. Bentzen (mbentzen@aol.com)
Michael D. Steger (msteger@steger-law.com)
Hughes & Bentzen, PLLC
1100 Connecticut Ave., NW, Suite 340
Washington, DC 20036
(202) 293-8975
(202) 293-8973 fax

_____
The Honorable Laura Taylor Swain, U.S.D.J.

Dated: May 3, 2010

15